IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                                        3:04cr47/LAC
                                                           3:07cv513/LAC/MD

MATTHEW TODD PUCKETT

---

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255  (doc. 171).  The government has filed a response (doc. 173) and the defendant has filed a reply  (doc. 175).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

## I.  BACKGROUND

Defendant Matthew T. Puckett and co-defendants Luciano Murga and Johnny Aldo Rizo were charged in a single count superseding indictment with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of a mixture and substance containing cocaine and 1,000 kilograms or more of a mixture and substance containing marijuana.  (Doc. 30).  Defendant was represented by appointed counsel Christopher Saxer, Esq.  Following a jury trial, defendant was

convicted as charged.  The jury specifically found that the offense conduct involved five (5) kilograms or more of a mixture or substance containing cocaine, and one thousand (1,000) kilograms or more of a mixture or substance containing marijuana. (Doc. 83).

The Probation Officer determined that defendant's base offense level, and ultimately his total offense level, was 34 in light of the marijuana equivalency of the quantity of drugs attributable to him, and the fact that no adjustments were warranted in defendant's case.  (PSR ¶ 43, 52).  Defendant had no criminal history, and thus his criminal history category was I.  (PSR ¶ 52).  The applicable guidelines range was 151 to 188 months imprisonment.  Counsel raised several objections concerning the trial, and contended that his client should receive a minor role adjustment, that the quantity of drugs attributed to him was inflated and that he should receive the benefit of the "safety valve."  (PSR ¶¶ 99-106)

The court overruled the objections with respect to drug quantity, the minor role adjustment and the safety valve.  (Doc. 149 at 7, 18-19).  Counsel argued strenuously in his client's behalf with respect to sentencing.  He noted the defendant's lack of criminal history and the fact that the defendant had gotten away from drugs and withdrawn from the conspiracy, returned to work, and was planning on getting married.  (*Id.* at 8-9, 19).  The court sentenced defendant to a term of 160 months imprisonment, which was the mid-point of the applicable advisory guidelines range.

Defendant appealed, arguing that the district court had abused its discretion by admitting six out-of-court statements without "expressly and on the record" making the predicate findings required by Federal Rule of Evidence 801(d)(2)(E) to admit the statements of a co-conspirator made in the course and furtherance of the conspiracy.  (Doc. 167 at 10).  Counsel had objected to only one of the statements at trial.  With respect to the single statement to which an objection had been made, the appellate court found that the district court had implicitly made the findings

required by the rule.  (*Id.* at 14).  The admission of the remaining challenged testimony was upheld as it did not affect defendant's substantial rights.  (*Id.* at 15-16).  Defendant filed a petition for a writ of certiorari, which was denied on November 27, 2007.

In the present motion, defendant raises several claims that counsel was constitutionally ineffective.  The government opposes the motion.

## II.  LEGAL ANALYSIS

The grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice.").  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional

violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,* 494 F.3d 997, 1002 (11th Cir. 2007). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065; *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and

without the distorting effects of hindsight. *Strickland*,  466 U.S. at 689, 104 S.Ct. at 2065.   To  show  counsel's  performance  was  unreasonable,  a  defendant  must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 496 F.3d 1270, 1281 (11th Cir. 2007); *United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003); (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).   When  examining  the  performance  of  an  experienced  trial  counsel,  the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."  *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).   Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).  Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401,

1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle,* 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing

is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

### A.  Counsel's failure to inform defendant about "open plea"

Defendant first contends that counsel was constitutionally ineffective because he failed to inform his client about the possibility of accepting an "open" guilty plea[1] arrangement.   In *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court held that the *Strickland* test applies to advice given by counsel in the context of guilty plea discussions. See *id.* at 58, 106 S.Ct. 366 (stating that "the *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel"). The Court determined that the prejudice prong in the context of the plea process "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 58, 106 S.Ct. 366.  Thus, under the prejudice prong, defendant must demonstrate that, but for his trial attorney's alleged ineffectiveness, he would have likely received a lower sentence, in this case through the entry of a guilty plea.  Defendant has failed to do that in this case.

Defendant claims that during his discussions with counsel, his attorney told him the only way for him to enter a guilty plea was if he cooperated with the government.  Defendant had no interest in doing this because of concerns for the safety for his family. (Doc. 171, Puckett declaration).  Affidavits from defendant's mother, Marie Puckett and defendant's girlfriend Jeanine Wood, corroborate

---

[1]An "open" guilty plea is a plea made by the defendant without the benefit of a plea agreement entered into with the Government. See *United States v. Navarro*, 476 F.3d 188, 189 (3rd 2007); *United States v. Booth*, 432 F.3d 542, 543 (3rd Cir. 2005) (citing *United States v. Casiano*, 113 F.3d 420, 423 (3rd Cir.1997)).

defendant's statement that counsel advised the defendant that the only way he could plead guilty is if he agreed to cooperate.  (Doc. 171, attachments).  Ms. Wood also recalled defendant telling counsel that he "would not be interested in pleading guilty if he had to cooperate."  Defendant now alleges that it was only after sentencing that he learned about the possibility of an open plea, and that had he known about this option, he would have entered an open plea in order to be eligible for an acceptance of responsibility adjustment.  Defendant further claims that if he had understood the difference in proof between conspiring to sell drugs and actual distribution he would not have gone to trial because he "had in fact entered into an agreement to sell cocaine, the essential element of a conspiracy."  (Puckett declaration at ¶ 3).

The government argues that the defendant's steadfast denials that he had committed the charged offense, even after his conviction, establish that counsel was not constitutionally ineffective because defendant could not have entered a guilty plea.   The PSR reflects that the defendant had failed to "accept personal responsibility for his involvement in the offense."  (PSR ¶ 49).  Defendant stated in open court at sentencing that he was "not guilty for everything that I've been charged for," and said "the Lord knows that I'm not guilty for all of these charges, and he "didn't sell cocaine like was testified."  (Doc. 149 at 12-13, 14).  He also  wrote a letter to the court explaining his involvement in which he repeatedly denied that he had sold cocaine for anyone, although he admitted using and having a "personal problem" with cocaine.   (Doc. 173, exh. E).  It is questionable whether the conduct to which defendant was willing to admit would have satisfied the court in a Rule 11 colloquy.

Defendant's assertion that he was not willing to cooperate is also in apparent contradiction to his statements at sentencing.  He told the court "I went and tried to help the law enforcement agency who testified against me, Your Honor, and I tried to help them in order to stop it in my neighborhood and my community, and it wound up coming back on me, but I was trying to help them," and "I did everything I could

to try to help law enforcement to stop it in my community.  I don't even have no friends because I can't trust friends to come to my home.  I don't have friends, because I just felt like, in order to stay away from everything, you just had to stay away from everything."  (Doc. 149 at 12, 13).  Defendant stated that he had spoken with Detective Vincent, other law enforcement officers in the county and an ATF agent.  (Doc. 149 at 15-16).  When asked by the court about his reasons for going to trial if he was so "repentant and willing to do right and stop and assist," defendant responded that the only reason he went to trial was because he "really didn't feel like [he] was guilty of the indictment." He went on to explain that he had told his attorney to tell the Assistant United States Attorney that "if he would have charged me with something that I was guilty of, or I felt I was guilty of, I would have accepted responsibility at that time.  But I couldn't like feel to accept responsibility for something that I wasn't guilty for, Your Honor."  (Doc. 149 at 13).  Counsel corroborated defendant's statement that defendant did not agree with the quantity with which he was charged, and that was the reason he went to trial, and clarified to the court that it was not that his client took the position that he was completely innocent of any wrongdoing. (Doc. 149 at 14).  However, during the discourse with the court neither counsel nor the defendant alluded to defendant's alleged unwillingness to cooperate with the government.

Defendant cites *United States v. Booth*, 432 F.3d 542 (3rd Cir. 2005) in support of his claim.  *Booth* involved the appeal of a denial of a § 2255 motion.  Defendant Booth claimed that his attorney, who knew that substantial evidence existed against Booth and that he did not want to cooperate with the government, rendered ineffective assistance of counsel by failing to inform his client that he could have entered an "open" guilty plea without proceeding to trial.  Booth had rejected the government's offer to plead guilty to one count of the indictment while a second

count was dropped,[2] and instead counter offered to plead guilty to the second count in exchange for dismissal of the first.  The government said it would accept the offer only if the defendant gave a proffer concerning his own culpability and that of any other participants.  Booth did not want to cooperate against anyone else involved in the crime and therefore proceeded to trial, after which he was found guilty of both charges.  In his pro se motion to vacate, defendant alleged that counsel was ineffective because he did not inform Booth that he could have entered an open plea to both counts of the indictment, which would have entitled him to a 3-level reduction for acceptance of responsibility.  The government argued in response that this reduction was not an option because of the applicable mandatory minimum sentence, and also noted that counsel had fully apprised the defendant of his plea options.  *Id.* at 544-545.  In so arguing, the government relied on an affidavit filed by defense counsel detailing the history of plea negotiations between defendant and the government, including the fact that the defendant had told counsel "he could not accept the terms of the proffer letter, namely cooperating against anyone else involved."  Booth's former attorney did not state in his declaration, however, that he had discussed the possibility of an open plea.

In reviewing Booth's petition, the Third Circuit said that "based upon the stage of the proceedings and the allegations in Booth's habeas petition, we must accept that Booth would have truthfully admitted the conduct comprising counts one and two and any additional relevant conduct."  *Booth,* 432 F.3d at 548.  As such, had he pleaded guilty, defendant would likely have received an acceptance of responsibility reduction, and hence a lower sentence.  Because mention of any discussion of the "open plea" was conspicuously absent from counsel's affidavit, the appellate court determined that it could not say that the allegations in the § 2255 motion

---

[2]Count one charged Booth with maliciously damaging by explosives property affecting interstate commerce, in violation of 18 U.S.C. § 844(i). Count two charged Booth with possession of an unregistered firearm in the form of a bomb, in violation of 18 U.S.C. §§ 5841, 5861(d), and 5871.

conclusively barred defendant from showing *Strickland* prejudice, and it remanded for the district court to conduct an evidentiary hearing on the facts of this claim.

Although the defendant relies heavily on *Booth*, this case is distinguishable from the case at bar in several respects.  In *Booth*, there was written proof that the defendant expressly rejected terms of a proffer requiring him to cooperate. Additionally, there was abundant evidence proving Booth's guilt of the two charged offenses, including his admission of guilt to several witnesses.  "Partial guilt," or the degree of guilt, was therefore not an issue.[3]  Finally, Booth had expressed a clear willingness to plead guilty, but for the fact that he would be required to cooperate.

The Third Circuit has the opportunity to re-examine *Booth* in *United States v. Gonzalez-Rivera*, 217 Fed. Appx. 166 **4 (3rd Cir. 2007), another appeal of the denial of an ineffective assistance of counsel claim in a § 2255 motion.  The defendant in that case was convicted after a jury trial of conspiracy to distribute cocaine, among other charges.   Gonzalez-Rivera had maintained his innocence throughout the proceedings, and his attorney had informed him of all of his options: guilty plea with or without cooperation, or proceeding to trial.  The Third Circuit contrasted the situation in *Booth* and found counsel was not constitutionally ineffective.  It noted that defendant's assertion that he would have accepted a guilty plea was belied by the record evidence that he steadfastly maintained his innocence throughout the proceedings, and therefore he failed to prove prejudice.

Like the defendant in *Gonzalez-Rivera*, defendant in this case has failed to prove prejudice.  Defendant's partial admission of guilt to the matters charged in the indictment would not have been sufficient to support a guilty plea.  Defendant asserts in his reply that "plea agreements are compromises," suggesting perhaps that some matters might have been dropped.  However, this court is well aware that

---

[3]The facts in Booth's case were much simpler than in the case at bar.  Booth either did or did not damage the property in question with an "unregistered firearm."  There is no consideration of degrees of culpability or involvement such as there is in a drug conspiracy case where, even after a finding of guilt, the quantity and kind of controlled substance has a major impact on sentencing.

the United States Attorney for this district does not plea bargain.[4]   In light of defendant's apparent attempt to minimize the scope of his involvement, it is unlikely that he could have entered a guilty plea before the district court.   Furthermore, as noted above, the PSR reflects that defendant did not accept responsibility for his offense conduct even after his conviction.   Thus, even if defendant had entered a guilty plea, if defendant denied his complicity for the crime and all other relevant conduct it would not have been an abuse of discretion to deny even a two level adjustment for acceptance.   *See Booth*, 432 F.3d at 548 (citations omitted).   In light of his denials of his involvement, and the court's ability to consider relevant conduct at sentencing, his sentence more than likely would have been the same.   Thus, he has failed to prove prejudice.

> B.     Cumulative error

Defendant's second contention is that while no single error rose to the level of constitutional ineffectiveness, the cumulative negative effect of multiple errors made by counsel resulted in ineffective assistance of counsel.

"A defendant is entitled to a fair trial but not a perfect one." *United States v. Ramirez,* 426 F.3d 1344, 1353 (11th Cir. 2005) (quoting *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953); *United States v. Adams*, 74 F.3d 1093, 1099-1100 (11th Cir. 1996)).   "[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible." *Ramirez,* 426 F.3d at 1353 (quoting *United States v. Thomas*, 62 F.3d 1332, 1343 (11th Cir. 1995)).   The same principle of cumulative error may be applied to a post-conviction claim of ineffective assistance of counsel.   See e.g., *United States v. Duong*, 250 Fed. Appx. 904, 2007

---

[4]See 3:06cr66/LAC, doc. 269, appendix C, affidavit of Assistant United States Attorney Goldberg. Mr. Goldberg avers that the longstanding policy of that office is not to engage in plea bargaining and states that he "would not agree to dismiss counts except where such dismissal would have no effect on a defendant's prospective sentence of imprisonment." (Doc. 269, appx. C).  A compromise on the quantity or type of controlled substance would certainly affect defendant's prospective sentence of imprisonment.

WL 2981435 (10th Cir. 2007); *United States v. Rooks*, 117 Fed. Appx. 237, 2004 WL 2799147 (4th Cir. 2004); *Fisher v. Angelone,* 163 F.3d 835, 852 (4th Cir. 1998).  In any event, cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors.  See *United States v. Conteh*, 234 Fed.Appx. 374, 2007 WL 1229043 (6th Cir. 2007); *Fisher v. Angelone,* 163 F.3d 835, 852 (4th Cir. 1998); *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998); *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990); *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984);  *United States v. Hardy*, 224 F.3d 752, 757 (8th Cir. 2000).  Thus, defendant must show error with respect the individual claims.  *Angelone, supra.*

### 1.  Pre-trial motions

Defendant first argues that other than a bail motion and two motions to continue or postpone the trial, counsel made no pre-trial motions whatsoever.  The only motion that defendant suggests that counsel could have filed was a motion regarding the government's interview of the defendant in which he "quite possibly should have been read his rights under *Miranda*, but was not."

The *Miranda* rule applies to <u>custodial</u> interrogations.   A "custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Oregon v. Mathiason*, 429 U.S. 492, 494, 97 S.Ct. 711, 713, 50 L.Ed. 2d 714 (1977) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966)).  This includes questioning that takes place in a suspect's home "after he has been arrested and is no longer free to go where he pleases."  *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714 (citing *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969)).

Defendant makes no factual or legal argument, but refers to the beginning page of the trial testimony of Sheriff's Deputy David Vincent.  (Doc. 107 at 166). Vincent testified about his contact with the defendant on January 31, 2001 at

defendant's residence.  (*Id.* at 169).  A man by the name of Harold Swance was at defendant's residence relaying information from the defendant to Deputy Vincent over the telephone.  Vincent asked if he could come to the residence to speak with the defendant, and Swance indicated that defendant said that would be fine.  (*Id.*)  Vincent and another detective, both of whom were dressed in plain clothes, went to Puckett's residence and met with him and Swance.  Defendant was aware that the other men were law enforcement officers with the Citrus County Sheriff's Office, but he was neither in custody nor under arrest as the men conversed in defendant's living room.  (*Id.* at 170-171).  During the conversation, defendant provided information about his prior dealings with marijuana over a two year period.  (*Id.* at 171-177).  Deputy Vincent testified that he did not arrest the defendant because of the difficulty of prosecuting a "historical" case on the state level, noting that historical prosecutions were usually done on the federal level.  (*Id.* at 177-178).  Clearly, the circumstances of this situation did not require that defendant be advised of his *Miranda* rights, and counsel was not ineffective for failing to make such an argument.  *See Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue).

## 2.  Failure to object to hearsay testimony

Defendant next claims that counsel was ineffective because he failed to make appropriate objections to the introduction of hearsay testimony regarding statements attributed to deceased co-conspirator Ruble via the testimony of other witnesses.  Counsel's omission failed to preserve confrontation issues under

*Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and objections under Federal Rule of Evidence 801(d)(2)(E).  The six specific instances of alleged hearsay error identified by the defendant are the same six statements the admission of which he challenged on appeal.  (Doc. 173, exh. A, at 5-6, 13-16).  As noted previously, counsel objected to the admission of only one of the challenged statements at trial, and defendant claimed on appeal that the objections to the other statements were preserved because any objection beyond the initial objection would have been futile.  The appellate court rejected this assertion, and reviewed the admission of the statement to which defendant had objected for abuse of discretion and the admission of the other five statements for plain error.  (Doc. 173, exh. A at 14).  The court found that the admission of the challenged testimony did not affect defendant's substantial rights.  The Eleventh Circuit stated that the preponderance of the evidence established that a conspiracy existed, that Ruble was defendant's co-conspirator and that the challenged statement was made in furtherance of the conspiracy.  See *United States v. Underwood*, 446 F.3d 1340, 1346 (11th Cir. 2006) (listing the three things the government must prove to introduce co-conspirator statements under Fed.R.Evid. 801(d)(2)(E)).  In light of these specific findings, defendant has not established that had counsel objected, the appellate court would have found admission of these statements to be an abuse of discretion.  Furthermore, statements made in furtherance of a conspiracy are not testimonial, by nature, and hence are not barred by the Confrontation Clause.  *Crawford*, 541 U.S. at 56, 124 S.Ct. at 1367; *Underwood, supra.*

### 3.  Failure to request certain jury instructions

Finally, defendant claims that counsel failed to request three jury instructions that would have been helpful to his case.  As long as a defendant's theory of defense has some basis in the evidence and legal support, a defendant is entitled to have the court instruct the jury on that theory.  *United States v. Dean*,  487 F.3d 840, 847 (11th

Cir. 2007) (citing *United States v. Orr*, 825 F.2d 1537, 1542 (11th Cir. 1987) (citing *United States v. Gold*, 743 F.2d 800, 819 (11th Cir. 1984), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985))).  The jury is presumed to have followed the judge's instructions.  *Hallford v. Culliver,* 459 F.3d 1193, 1204 (11th Cir. 2006); *United States v. Calderon*, 127 F.3d 1314, 1334 (11th Cir. 1997); *United States v. Wilson,* 149 F.3d 1298, 1302 (11th Cir. 1998); *United States v. Chandler,* 996 F.2d 1073, 1088 (11th Cir. 1993).

### a.  Withdrawal Instruction

Defendant first claims that counsel should have requested a withdrawal instruction. An accused conspirator's participation in a conspiracy is presumed to have continued until all objects of the conspiracy have been accomplished or until the last overt act has been committed by any of the conspirators.  *United States v. Arias,* 431 F.3d 1327, 1340 (11th Cir. 2005); *United States v. Harriston,* 329 F.3d 779, 783 (11th Cir. 2003) (citing *United States v. Gonzalez*, 921 F.2d 1530, 1548 (11th Cir. 1991) (citing *United States v. Coia*, 719 F.2d 1120, 1124 (11th Cir.1983))); *United States v. Finestone*, 816 F.2d 583, 589 (11th Cir. 1987) (citing *Hyde v. United States*, 225 U.S. 347, 369, 32 S.Ct. 793, 803, 56 L.Ed. 1114 (1912)).  A defendant can overcome this presumption of continued participation only by showing that he affirmatively withdrew from the conspiracy or that the final act in furtherance of the conspiracy has occurred.  *Harriston,* 329 F.3d at 783 (citing *United States v. Reed*, 980 F.2d 1568, 1584 (11th Cir. 1993)).  A mere cessation of activity in the conspiracy is not sufficient to establish withdrawal.  *Finestone*, 816 F.2d at 589; *Hyde*, 225 U.S. at 369, 32 S.Ct. at 803.  The accused participant need not notify every other member that he will no longer participate, but the acts of withdrawal must be "communicated in a manner reasonably calculated to reach co-conspirators." *Arias*, 431 F.3d at 1341 (quoting *United States v. U.S.Gypsum Co.,* 438 U.S. 422, 464-465, 98 S.Ct. 2864, 2887 (1978)).  An effective withdrawal insulates the defendant from *Pinkerton* liability for the

substantive crimes of co-conspirators committed in furtherance of the conspiracy after his withdrawal, but it will not absolve the defendant from liability for the inchoate crime of conspiracy, which is completed upon commission of an overt act. *Arias*, 431 F.3d at 1340 n.18.  If a conspirator establishes the affirmative defense of withdrawal, the statute of limitations will begin to run at the time of withdrawal. *Arias*, 431 F.3d at 1340.

The only evidence defendant cites in support of his assertion of withdrawal is a statement by co-conspirator that he and Ruble had a falling-out and went out of business (doc. 106 at 59), and the testimony of Deputy Vincent, described above, where defendant detailed his involvement in the conspiracy but stated that he was no longer involved.  Vincent stated that defendant told him the last time he saw (co-conspirator) Ruble was in July of 1999.[5]  Even if the two record citations provided by defendant were legally sufficient to establish his withdrawal from the conspiracy, a conclusion this court does not adopt,  defendant's withdrawal did not take place more than five years before his was indicted.  *See Arias*, 431 F.3d at 1340.  Therefore, defendant would not have been "absolve[d] . . . from liability for the inchoate crime of conspiracy," *Arias*, 431 F.3d at 1340 n.18, and a withdrawal instruction was not warranted.

### b. Separate Conspiracy Instruction

Second, defendant contends that counsel should have requested an instruction or argued that defendant was a member of a separate conspiracy that dealt solely in marijuana and not in cocaine.  Neither the evidence nor the jury's verdict supports such an instruction.  In fact, the verdict form specifically allowed the jurors to find that the conspiracy did not involve cocaine. (Doc. 83).  Instead, the

---

[5]Vincent also testified about a shipment of $74,000 cash made up of small bills that were rubber-banded together in thousand-dollar increments that defendant sent to Texas.  Although Vincent's testimony does not reflect the date of this shipment, the government states in its memorandum that it took place in July of 2000.  At trial, Vincent expressed his doubt that the money was legitimate earnings for a down payment for a race car as the defendant insisted.  (Doc. 107 at 172).

jury found that the conspiracy involved five kilograms or more of a mixture or substance containing cocaine.  And, in the affidavit defendant submitted in support of his motion, he agrees that he had entered into an agreement to sell cocaine.  (Doc. 171, affidavit of Matthew Puckett).  Counsel's failure to request this instruction was not constitutionally deficient.

### c.  Buyer-Seller instruction

Finally, defendant contends counsel should have asked for a buyer-seller instruction.  The essence of the conspiracy is an agreement, not the commission of the substantive offense.  *United States v. Mercer,* 165 F.3d 1331, 1335 (11th Cir. 1999) (citing *Toler*, 144 F.3d at 1426).  "Where the buyer's purpose is merely to buy and the seller's purpose is merely to sell, and no prior or contemporaneous understanding exists between the two beyond the sales agreement, no conspiracy has been shown." *Mercer*, 165 F.3d at 1335 (quoting *United States v. Beasley*, 2 F.3d 1551, 1560 (11th Cir. 1993); *United States v. Burroughs*, 830 F.2d 1574, 1581 (11th Cir.1987)); *United States v. Thompson*, 422 F.3d 1285, 1292 (11th Cir. 2005) ("the existence of a simple buyer-seller relationship alone does not furnish the requisite evidence of a conspiratorial agreement").  In the case of a purchaser of narcotics, agreement may be inferred when the evidence shows "a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser."  *Mercer,* 165 F.3d at 1335 (citing *United States v. Beasley*, 2 F.3d 1551 (11th Cir. 1993); *United States v. Bascaro*, 742 F.2d 1335, 1359 (11th Cir. 1984)).  However, two parties charged with agreeing to distribute drugs might not be guilty of conspiracy when the evidence demonstrates that the parties understood their transactions to do no more than support the buyer's personal drug habit.  *United States v. Garcia*, 447 F.3d 1327, 1339 (11th Cir. 2006) (quoting *United States v. Dekle*, 165 F.3d 826, 830 (11th Cir. 1999)).  The purpose of the buyer-seller rule is to separate consumers, who do not plan to redistribute drugs for profit, from street-level, mid-level, and other distributors, who

do intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy. *United States v. Ivy*, 83 F.3d 1266, 1285-1286 (10th Cir. 1996)[6] (citing *United States v. Roberts*, 14 F.3d 502, 513 (10th Cir. 1993) (buyer-seller rule inapplicable because circumstantial evidence showed defendant was more than just an end user); *United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991) ("Casual transactions with persons involved in a conspiracy are insufficient to establish that critical connection--one who merely purchases drugs or property for personal use from a member of a conspiracy 'does not thereby become a member of the conspiracy.'") (emphasis added) (quoting *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990))).   In this case, as defendant admitted to Deputy Vincent, his involvement with Ruble went beyond a mere buyer-seller arrangement.  The fact that he was selling drugs in order to afford drugs for his own personal use does not erase his role as a member of the conspiracy.    The evidence did not support a buyer-seller instruction, and counsel was not deficient for failing to request it.


Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 171)  be DENIED.


At Pensacola, Florida, this 13th day of May, 2008.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

---

[6]The Tenth Circuit's decision in *Ivy* is cited with approval in the "Annotations and Comments" of the Eleventh Circuit Pattern Jury Instructions, Criminal, Offense Instruction § 7 (2003).

## <u>NOTICE TO THE PARTIES</u>

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. <u>See</u> 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**